**Merl E. BLAIR, Plaintiff,**

v.

**GRAHAM CORRECTIONAL CENTER, Illinois Department of Corrections, and American Federation of State, County and Municipal Employees (AFSCME), Defendants.**

**No. 91–3030.**

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 10, 1992.

Penny Nathan Kahan, Chicago, Ill., Vernon L. Alger, Berrien Springs, Mich., for plaintiff.

Christine Marie Giacomini, Asst. Atty. Gen., Springfield, Ill., Gail E. Mrozowski, Gilbert A. Cornfield, Chicago, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

Are a penal institution, the Illinois Department of Corrections and the prison employees' union liable under Title VII for failing to give Plaintiff a premium schedule to accommodate his religious beliefs when Plaintiff was not entitled to such a schedule under the terms of the collective bargaining agreement?

Of course not!

Summary Judgment for Defendants

## I. FACTS

Graham Correctional Center is a prison located in Hillsboro, Illinois with an inmate population in excess of 1,000. Its inmates consist of men between the ages of 17 to 60 with a full range of offenses including a large percentage of Class X felons. There have been violent incidents at the institution in the past. Consequently, Graham Correctional Center requires a full staff of corrections officers every hour of every day, including sabbaths and holidays.

Blair was employed as a corrections officer by the Illinois Department of Corrections beginning in May of 1984. He is a member of the Seventh Day Adventist religion which requires that its members not work from Friday sundown to Saturday sundown in order to observe the Sabbath. Blair alleges that he informed the warden of Graham Correctional Center of his religion's requirement during the employment interview. He was hired and put on probationary status which meant that he was given time off to observe his sabbath. Once the probationary period ended, Blair became a member of AFL–CIO Local 2856 and was subject to the labor agreement between his union and employer.

The labor agreement allows employees with greater seniority to "shift bump" employees with lesser seniority. Consequently, because Fridays and Saturdays are the premium days off, Blair was bumped from having his sabbath day off.

Graham Correctional Center's warden attempted to accommodate Blair's religious beliefs by contacting the union and attempting to have him placed in another job or agency. However, the union's seniority requirements prevented Blair from obtaining a different job with his sabbath off and he was not offered a job at another agency. Nevertheless, Blair allegedly used personal days, sick days and compensatory holidays in order to observe his sabbath. Blair was ultimately disciplined, then discharged on June 9, 1988, for excessive absenteeism.

Subsequently, Blair brought suit against his employers and union under Title VII, 42 U.S.C. 2000e–2(a)(1) alleging that they intentionally and willfully engaged in unlawful employment practices by discriminating against him on the basis of his religion. The Graham Correctional Center and the Illinois Department of Corrections filed a motion for summary judgment on Count I contending that they reasonably attempted to accommodate Blair's religious beliefs. The union (AFSCME) moved for summary judgment on Count II on the basis that it did not have a duty to alter the provisions of the collective bargaining agreement with the state in order to accommodate Blair.

## II. SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genu-

ine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material facts exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1988).

## III. ANALYSIS

### A. Graham Correctional Center and Illinois Department of Corrections

Title VII, § 2000e–2(a)(1) provides:
(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

The initial step in a Title VII case is to determine whether plaintiff has presented a *prima facie* case. *Baz v. Walters*, 782 F.2d 701, 706 (7th Cir.1986). Three elements must be shown: 1) "plaintiff must show that he or she holds a sincere religious belief that conflicts with an employment requirement;" 2) "the plaintiff must have informed the employer of this conflict;" 3) "the employer must have discharged, disciplined or otherwise damaged the plaintiff." *Moore v. A.E. Staley Mfg. Co.*, 727 F.Supp. 1156 (N.D.Ill.1989).

Once the plaintiff has established a *prima facie* case, the employer must demonstrate that it cannot accommodate the plaintiff's religious practice without undue hardship. *Moore,* at 1160. An undue hardship is anything more than a *de minimis* cost to the employer. *Baz,* at 706. In a paramilitary organization, it is even more difficult to accommodate employees who are restricted as to their assignments in view of the fact that the demands may overwhelm the organization. *Ryan v. United States Department of Justice*, 950 F.2d 458, 462 (7th Cir.1991) (mission of FBI would be injured if "reasonable accommodation" required it to reassign agents from cases in which they had a conflicting religious belief). Breaching a collective bargaining agreement in order to accommodate an employee's religious practices is an undue hardship. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79, 97 S.Ct. 2264, 2274, 53 L.Ed.2d 113 (1977).

The personnel structure of Graham Correctional Center is analogous to a paramilitary organization. This Court notes the importance to the public interest in having a full staff of corrections officers on duty every hour of every day of the week, including sabbaths and religious holidays in an institution such as Graham Correctional Center. Obviously, most everyone prefers not to work weekends and holidays. However, that is one of the purposes for a collective bargaining agreement with seniority scheduling; employees put their time-in and eventually work their way up to getting the premium days off while Defendants are assured of having a full staff to guard the prison inmates year round. If Defendants were required to amend the union agreement in order to accommodate all employees religious practices, they would run the risk of having the correctional institutions undermanned, thereby endangering other employees and society. Consequently, this Court finds that Graham Correctional Center and the Department of Corrections made reasonable—albeit unsuccessful—attempts to accommodate Blair's religious beliefs when they attempted to work with the union and other agencies to have Blair reassigned.

### B. The Union

As previously noted, the Supreme Court held that breaching the seniority provision in a collective bargaining agreement would impose an undue hardship upon a union. Accordingly, "[t]he breach of a provision in

a collective bargaining agreement, even if it is not a seniority provision, could potentially result in greater than a *de minimis* cost to the [union]." *Moore,* at 1162.

This Court finds that the reasoning announced by the Supreme Court in *Trans World Airlines* is applicable to an employee union: "[i]t would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far." *Trans World Airlines,* 432 U.S. at 79, 97 S.Ct. at 2274.

Plaintiff alleges that several other possible accommodations were available to the union in order to assist him in observing his religious beliefs, such as voluntary shift swapping with other guards. This Court finds that as a matter of law, neither Defendant had a duty to attempt to arrange swap shifts between Plaintiff and other employees. *See Ryan,* 950 F.2d at 462.

*Ergo,* Defendants' motions for summary judgment on Counts I and II are ALLOWED.

Case closed.